IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOY GASPARIK, et. al,
        Plaintiffs,

vs.                                  No.  3:05cv304/MD

WAGNER INDUSTRIES, INC.,
et. al.,
        Defendants.

---

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

        This cause is before the court upon the motion of defendants Pall Corporation and Gelman Sciences, Inc. (hereafter with respect to the instant motion "Pall/Gelman") motion for Summary Judgment pursuant to Fed.R.Civ. P. 56(c) and Local Rule 7.1, (doc. 68), their statement of material facts (doc. 69) and the affidavit of Nancy Kornbluh (doc. 70). Plaintiffs have filed a memorandum of law in response and opposition (doc. 80), a statement of material facts (doc. 81), a statement of disputed facts (doc. 82), and the affidavit of attorney Crystal Spencer.  (Doc. 83).  Defendants also filed a reply. (Doc. 89).

FACTUAL BACKGROUND

        In this case, plaintiff Joy Gasparik, both individually and as personal representative of the estate of her deceased husband Richard Gasparik[1] sues defendants Wagner Industries, Inc. ("Wagner"), Sandvik Process Systems, Inc., ("Sandvik"), Pall Corporation ("Pall") and Gelman Sciences, Inc. ("Gelman") for damages resulting from an on-the-job

---

1  Mr. Gasparik died during the pendency of this litigation.  (Doc. 5).

injury that occurred on June 28, 2001.  Plaintiff's hand and arm became trapped inside an industrial machine while she was performing her regular duties during the normal course and scope of her employment with Pall/Gelman.

Defendants Wagner and Sandvik, who are not parties to the instant motion, are alleged to have designed, manufactured and sold a slitter/winder machine to defendants Pall and Gelman.  (Doc. 1, Complaint ¶¶ 18, 19, 20, 21).  The complaint alleges that defendant Pall is plaintiff's employer, and that she was using the machine in question at Gelman, a subsidiary of Pall. (Doc. 1, Complaint ¶¶ 14, 25, 27).[2]  Plaintiff alleges in Count I that defendant Wagner was negligent.  Counts II and III are claims for strict product liability against Wagner for defective design and failure to warn.  Defendant Sandvik is also charged with negligence and strict liability for defective design and failure to warn.[3]

Defendants Pall and Gelman are accused in Counts VI and VII, which are for all intents and purposes identical, of engaging in conduct "substantially certain to result in injury or death."  (Doc. 1, Complaint, pp. 16-28).  The basis for these claims is that the slitter/winder machine plaintiff was operating when she was injured was unsafe and unreasonably dangerous, that the defendants failed to protect their employees by providing adequate safety equipment or safety measures or by removing safety devices from the machine, that defendants failed to warn employees about the dangerous nature of the machine, and that defendants failed to take proper measures expeditiously to remove plaintiff from the machine once she became entangled.

In the current motion defendants Pall and Gelman contend that plaintiff's voluntary election of Florida workers' compensation remedies bars her civil tort claim against them, and that plaintiff Joy Gasparik's claim as personal representative of Richard Gasparik should be dismissed as, absent the main tort, no underlying claim would remain.  They ask that the court enter judgment in their favor, and reserve jurisdiction on entitlement to attorney fees and costs.

---

2  Defendants state in their statement of undisputed facts that Pall and Gelman are now the same corporate entity because Pall acquired Gelman in 1997.  (Doc. 69 at 2).

3  The claims against Sandvik are erroneously labeled Counts III through V, instead of IV through VI.

<u>DISCUSSION</u>

<u>Summary Judgment Standard</u>

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."Rule 56(c), Fed.R.Civ.P. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986); see also *Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir. 1996).

However, summary judgment is improper "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995). An issue of fact is "material" if it might affect the outcome of the case under the governing law. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. See *id.*; see also *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986).

Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. See *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000); *Ramsey v. Leath*, 706 F.2d 1166, 1170 (11th Cir. 1983). On a summary judgment motion, the record and all reasonable inferences that can be drawn from it must be viewed in the light most favorable to the non-moving party. *Whatley v. CNA Ins. Cos.*, 189 F.3d 1310, 1313 (11th Cir. 1999).

<u>Intentional torts and the Workers' Compensation System</u>

Defendants first maintain that the Workers Compensation Act, chapter 440, Florida Statutes, is the exclusive remedy for recovery against an employer for an injury suffered in the normal course and scope of an individual's employment. § 440.11, Florida Statutes, and thus, essentially, that plaintiff may not pursue an intentional tort.

"Florida's Workers' Compensation Law, codified in chapter 440, Florida Statutes..., protects workers and compensates them for injuries in the workplace, without examination of fault in the causation of the injury." *Feraci v. Grundy Marine Construction*, 315 F.Supp.2d 1197, 1204 (N.D. Fla. 2004) (quoting *Gerth v. Wilson*, 774 So.2d 5, 6 (Fla. 2nd DCA 2000)). The goal of the legislature in creating a workers' compensation process was to provide "quick and efficient delivery of disability and medical benefits to an injured worker and to facilitate the worker's return to gainful reemployment at a reasonable cost to the employer." *Id.* (quoting Fla. Stat. § 440.015 (2002)). "Essentially, under this no-fault system, the employee gives up a right to a common-law action for negligence in exchange for strict liability and the rapid recovery of benefits." *Id.* (quoting *Turner v. PCR, Inc.*, 754 So.2d 683, 686 (Fla. 2000) (citing *United Parcel Service v. Welsh*, 659 So.2d 1234, 1235 (Fla. 5th DCA 1995); 2 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation § 65.10 (Desk ed.1999))). "The goal of this policy is to avoid lawsuits at the outset, not simply to prevent adverse verdicts against employers and coworkers at the end of lengthy litigation." *Id.* (quoting *Fleetwood Homes of Florida, Inc. v. Reeves*, 833 So.2d 857, 864 (Fla. 2nd DCA 2002)).

For those who fall within the purview of the statute, "workers' compensation is the exclusive remedy for 'accident[al] injury or death arising out of work performed in the course and the scope of the employment.'" *Id.* (quoting *Turner*, 754 So.2d at 686 (quoting Fla. Stat. § 440.09(1)(1997))). Thus, absent an excepted circumstance, Florida's Workers' Compensation Law generally protects employers from liability for an employee's injuries beyond the provision of workers' compensation benefits. "At the same time..., the statutory scheme itself explicitly recognizes the liability of co-employees [and supervisors] to injured

employees under certain limited conditions, including intentional or reckless actions." *Id*. (citing Fla. Stat. § 440.11(1) (1997)).

In 2001, when this cause of action accrued, section 440.11(1) Florida Statutes, Exclusiveness of Remedy, provided in part that

> The liability of an employer prescribed in s. 440.10 shall be exclusive and in place of all other liability of such employer to any third-party tortfeasor and to the employee, the legal representative thereof, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or the legal representative thereof in case death results from the injury, may elect to claim compensation under this chapter or to maintain an action at law or in admiralty for damages on account of such injury or death.

§ 440.11, F.S.A. (West 2001).  Although the statute stated that the liability under section 440 was "exclusive," case law made clear that the workers' compensation scheme "[was] not intended to insulate employers from liability for intentional torts." *Turner v. PCR, Inc*., 754 So.2d 683, 689 (Fla. 2000); see also *Aguilera v. Inservices, Inc*., 905 So.2d 84, 90-91, 98 (Fla. 2005).  However, because only intentional torts are excepted, a showing of negligence or even gross negligence is insufficient to survive summary judgment.  *Folds v. J. A. Jones Construction Company*, 875 So.2d 700, 704 (Fla 1st DCA 2004) (citing *Lawton v. Alpine Engineered Prods., Inc.,* 498 So.2d 879 (Fla. 1986).  Case law held that a tort complaint can overcome the employer's immunity under the workers' compensation statute if the complaint alleges conduct that evidences a deliberate intent to injury, or that is "substantially certain to result in injury or death to the employee." *Folds*, 875 So.2d at 704 (citing *Turner v. PCR, Inc*., 754 So.2d 683, 687 (Fla. 2000)); see also *State of Florida Department of Transportation v. V.E. Whitehurst & Sons, Inc.*, 636 So.2d 101, 105 (Fla. 1st DCA), *rev. denied* 645 So. 2d 456 (Fla. 1994); *Fisher v. Shenandoah Gen. Constr. Co.,* 498 So.2d 882, 883 (Fla. 1986). Section 440.11, Florida Statutes was amended effective October of 2003, codifying and heightening the exception previously recognized in case law.  The revised § 440.11 provides in pertinent part as follows:

(1) The liability of an employer prescribed in s. 440.10 shall be exclusive and in place of all other liability, including vicarious liability, of such employer to any third-party tortfeasor and to the employee, the legal representative thereof, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except as follows:

. . .

(b) When an employer commits an intentional tort that causes the injury or death of the employee. For purposes of this paragraph, an employer's actions shall be deemed to constitute an intentional tort and not an accident only when the employee proves, by clear and convincing evidence, that:

1. The employer deliberately intended to injure the employee; or

2. The employer engaged in conduct that the employer knew, based on prior similar accidents or on explicit warnings specifically identifying a known danger, was *virtually certain to result in injury or death* to the employee, and the employee was not aware of the risk because the danger was not apparent and the employer deliberately concealed or misrepresented the danger so as to prevent the employee from exercising informed judgment about whether to perform the work.

§ 440.11 Florida Statutes (West 2005) (emphasis added); See *Travelers Indem. Co., v. PDR Inc.,* 889 So.2d 779, 793 n.16 (Fla. 2004) (noting the difference between the objectively-substantially-certain standard adopted in *Turner* and the Legislature's virtual-certainty standard).

In her complaint, plaintiff has clearly alleged the commission of an intentional tort. In fact, language contained in counts VI and VII tracks the language of the case law cited above, that the defendants' conduct was "substantially certain to result in injury or death." Accepting the allegations of the complaint as true, this assertion is factually supported. Plaintiff alleges that the machine she was required to operate was unsafe and unreasonably dangerous, among other reasons, because it contained moving parts that could catch and draw in an operator's clothing, did not incorporate either a guard or safety mechanisms to prevent this, was designed so that the controls were inaccessible to an operator who had been drawn into the machine, did not have an emergency shut off device

that was either accessible to the operator or was automatic, and because there were inadequate instructions about the safety hazards of the machine or warning signs to this effect. (Complaint, ¶ 94).[4]  She further contends that defendants should have known that the failure to provide safety equipment and safety measures, which was in violation of Occupational Safety and Health Administration regulations, was substantially certain to result in injury or death, and that in failing to provide such measures defendants engaged in conduct which was substantially certain to result in injury or death. (*Id.* ¶¶ 95, 97, 99-100).  Plaintiff also alleges that the defendants were aware of the susceptibility for entrapment in the machine, but nonetheless refused to provide safety equipment and measures that could have prevented plaintiff's injury. (*Id.* ¶102).  Plaintiff maintains in the alternative that if safety devices or warnings had been placed on the slitter/winder machine at the time of manufacture, the defendants had removed, altered or obliterated those devices or warnings. (*Id.* ¶¶ 104, 105 106).  In either event, plaintiff contends that she was assigned to temporary duty involving the machine but was not provided with proper training and safety procedures, and the dangers involving the machine were misrepresented and/or not made known to her. (*Id.* ¶¶ 108, 109, 111, 113-116).  Finally, plaintiff contends that after her arm became entangled in the machine, the defendants refused to break down the machine to extricate her from it, or to use the Jaws of Life or other extricating equipment, and that these actions were substantially certain to, and did, result in increased injuries or death. (*Id.* ¶¶ 118-122).

Defendants' statement of undisputed facts in support of their motion for summary judgment (doc. 69) does not contradict or address any of the plaintiff's factual allegations, or whether they rise to the level of an intentional tort.  Instead, they focus on alleged inconsistencies in plaintiff's pleading, and her post-incident election of remedies.

---

4  Because the allegations against the two defendants are identical, the court has included only citations to Count VI, against defendant Pall.

Election of Remedies

Defendants claim that in order to receive workers' compensation benefits, plaintiff had to admit that her injuries resulted from an accident rather than from an intentional tort. They maintain that because plaintiff never contended during workers' compensation proceedings that her injury was caused by intentional action of her employers, she is estopped from now doing so.  Otherwise stated, defendants maintain that plaintiff cannot now take a position that is contrary to the position she took in the workers' compensation proceedings, and that plaintiff's case against them is precluded by law.

Defendants rely on two recent cases from the First District Court of Appeal of Florida:  *Martin Electronics, Inc. v. Jones*, 877 So.2d 765 (Fla 1st DCA 2004) and *Powers v. E.R. Precision Optical Corporation*, 886 So.2d 281 (Fla 1st DCA 2004), both of which considered the issue of election of remedies, albeit from different procedural postures. The *Jones* plaintiff, like the plaintiff herein, received workers' compensation benefits and then sought to bring a civil suit, and in *Powers*, the plaintiff pursued workers' compensation benefits after a successful civil suit against a co-worker who assaulted him.

In *Jones,* the plaintiff was injured in an explosion that occurred on his employer's premises.  Workers' compensation benefits were voluntarily paid by the defendant employer until a dispute arose about payment for attendant care and plaintiff's counsel filed a petition for benefits with the Office of the Judges of Compensation Claims.  As part of the petition, the parties completed a form stipulation answering questions regarding the accident, and the judge of compensation claims approved and adopted the stipulation that plaintiff had "sustained an injury by accident."  *Jones*, 877 So. 2d at 767.  While the administrative case was pending, the plaintiff filed an action in circuit court in which he contended that his injuries were the result of intentional conduct by his employer that was "substantially certain to result in injury or death."  *Id.*  The employer moved for summary judgment based on election of remedies, arguing that having elected the workers' compensation remedy by actively pursuing the workers' compensation case to a conclusion on the merits, the plaintiff was judicially estopped from taking an inconsistent position in that case.  The employer argued, as do defendants in this case,  that because plaintiff had

taken the position in the workers' compensation proceeding that the injury was accidental, he could not subsequently argue that his injuries were the result of intentional conduct. The trial court denied summary judgment and defendant appealed.

The First District Court of Appeal reversed, citing *Matthews v. G.S.P. Corp.*, 354 So.2d 1243, 1244 (Fla 1st DCA 1978) for the proposition that "an employee may not elect to declare his injury to have been an accident occurring in the course of his employment and thereafter, repudiate such position by alleging that the place and conditions of his employment were so dangerous that the injury was not in fact an accident." 877 So. 2d at 768-769.   Recognizing that the most recent analogous decision of the Supreme Court of Florida, *Turner v. PCR, Inc.,* 754 So.2d 683 (Fla. 2000), did not have before it the issue of whether an election of remedies had been made, the First DCA certified a question regarding elections of remedies to the Supreme Court of Florida.[5]

In *Powers v. E.R. Precision Optical Corporation*, decided five months after *Jones*, a plaintiff who had already obtained a judgment in circuit court for past and future medical benefits and pain and suffering[6] against the co-worker who had assaulted him sought workers' compensation benefits from his employer. 886 So.2d 281 (Fla 1st DCA 2004). Plaintiff Powers sought payment of workers' compensation disability benefits, authorization of an orthopedic spine specialist, and payment of medical bills.   Summary judgment was granted in favor of the defendant employer at the administrative level and the plaintiff appealed.  The court found that plaintiff's previously filed judicial complaint, alleging battery by a fellow employee, was not inconsistent with the position taken in his petition for benefits, that the owner of the company (the same fellow employee) pushed him over a

---

5   The certified question was the following: May an employee receiving workers' compensation benefits litigate entitlement to additional benefits then, having obtained an award of the additional workers' compensation benefits, bring suit in circuit court for the personal injuries sustained on the job that were the basis for the award. *Jones*, 877 So. 2d at 769.  Review was granted, 894 So.2d 970 (Fla. 2005), briefs were filed (see 2004 WL 2479869 and 2004 WL 3094108), and oral argument was heard on June 7, 2005.  As of the date of this order, no decision has been rendered.

6   The award actually covered pain and suffering, disability, physical impairment, mental anguish, inconvenience, aggravation of disease or physical defect, and loss of capacity for the enjoyment of life.  886 So.2d at 283.

machine.  In the civil case, Powers did not specifically allege that the defendant employer was itself guilty of an intentional tort.  However, the employer had been found vicariously liable in that case on the basis that the batterer was at all relevant times the employer's agent and acting within the scope of his employment. 886 So. 2d at 285.  The court found that a battery by an employer, unlike a battery by a mere co-employee who is not the employer's alter ego, is inherently irreconcilable with the event being an "industrial accident" under section 440.11(1) Florida Statutes (2001). *Id*. at 286.  Thus, if the batterer was the employer's alter ego, the civil suit against him had to be a suit against the employer itself, thereby judicially estopping plaintiff from taking an inconsistent position in the petitions for benefits, because an employer's intentional tort, even if committed by an alter ego, is not an industrial accident. *Id.*

Based on the decisions in *Jones* and *Powers,* defendants maintain that plaintiff may not plead inconsistent positions in the workers' compensation proceeding (that her injury was the result of an accident) and in this action (that her injury was the result of an intentional act), and therefore that she is judicially estopped from bringing this claim.  In response, plaintiff contends that her intentional tort claim is separate and distinct from the negligence workers' compensation claim and that they are therefore not mutually exclusive or necessarily inconsistent with one another.   While plaintiff is certainly correct that intentional tort claims are not barred under workers' compensation law, the cases upon which plaintiff relies are easily distinguishable from the instant case and do not support her position.

In *Aguilera v. Inservices, Inc.,* 905 So.2d 84 (Fla. 2005), the first case upon which the plaintiff relies, an employee brought suit against the employer's workers' compensation carrier due to its handling of the claims process.  After the employee was injured and filed his claim, the carrier allegedly engaged in a pattern of intentional, outrageous and harmful conduct including denying or delaying authorization for medically necessary treatment on several occasions, wrongly informing him that his benefits were being terminated, interfering with the physician patient relationship and encouraging the employee to lie to his attorney.  905 So.2d at 96.  Plaintiff Aguilera's allegations were found to support a claim

for intentional infliction of emotional distress and therefore precluded immunity under workers' compensation law.  Of great significance here was that the injuries that were caused by the allegedly intentionally tortious conduct were separate and distinct in origin from the initial on-the-job injury that had been caused by a forklift accident.  Because of this, the subsequent intentional tort suit, for actions occurring after and separate from the on-the-job injury, was not barred.[7]  Clearly, this case is only tangentially relevant to plaintiff Gasparik's position.

In *Turner v. PCR, Inc.*, 754 So.2d 683 (Fla. 2000), the court considered a civil claim by the estate of an employee killed in an explosion, and recognized that the workers' compensation scheme does not insulate employers from liability for intentional torts. Again, however, the taking of inconsistent positions, or election of remedies, was not at issue, because the plaintiff's estate had not pursued a workers' compensation claim. Rather, the employer attempted to raise it as a defense to the wrongful death and negligence action.  In parsing the language of the statute, the court stated that "it would appear logical to conclude that *if a circumstance is substantially certain to produce injury or death*, it cannot reasonably be said that the result is 'unexpected' or 'unusual,' and thus such an event should not be covered under workers' compensation immunity." 754 So.2d at 689 (emphasis in original). It reversed the grant of summary judgment, finding that a factual question remained as to whether the employer had engaged in conduct that was substantially certain to result in injury.  The law is clear that the intentional tort remedy remains, but this alone is insufficient to prove plaintiff's position.

As noted above, four years after *Turner*, the *Jones* court, recognizing that the election of remedies issue was not before the court in *Turner* certified a question of great public importance to the Supreme Court of Florida.  The *Jones* decision is upon review before the Supreme Court of Florida, and the plaintiff in this case has adopted, in some instances nearly verbatim, the arguments that Jones makes in his appellate brief.  See Initial Brief of Petitioner in *Jones v. Martin Electronics, Inc.*, 2004 WL 2479869.  Plaintiff

---

7  It is also worth noting that plaintiff's election of remedies was not at issue in *Aguilera*.

asks that the court stay its decision until the Supreme Court of Florida renders its decision in *Jones*, if it believes that election of remedies is at issue.  This court will not do, in light of both the defendants' request for expediency due to discovery deadlines, as well as concern for managing the pending docket.   Still, this court recognizes that in ruling on this case its role is neither to rewrite state law nor to speculate on how the Supreme Court of Florida might rule in a given case.  Rather, it is bound to apply the law of the state at the time of its decision.  See *Arawak Aviation, Inc. v. Indemnity Ins. Co. of North America*, 285 F.3d 954, 959 (11th Cir. 2002) (citing *Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771, 775 (11th Cir. 2000) ("Absent a decision by the highest state court or persuasive indication that it would decide the issue differently, federal courts follow decisions of intermediate appellate courts in applying state law. Concomitantly, the Florida Supreme Court has held that '[t]he decisions of the district courts of appeal represent the law of Florida unless and until they are overruled by this Court. Thus, in the absence of interdistrict conflict, district court decisions bind all Florida trial courts.'") (quoting *Pardo v. State*, 596 So.2d 665, 666 (Fla. 1992)) (internal citation omitted); *Veale v. Citibank*, 85 F.3d 577, 580 (11th Cir. 1996) ("In matters of state law, federal courts are bound by the rulings of the state's highest court. If the state's highest court has not ruled on the issue, a federal court must look to the intermediate state appellate courts.") (internal citations omitted)); *Huddleston v. Dwyer*, 322 U.S. 232, 64 S.Ct. 1015, 88 L.Ed. 1246 (1944).  And in this case, the decisions of the First District Court of Appeal would have been controlling, had this action continued in state court.

Plaintiff's Workers' Compensation Claims

The parties agree that after plaintiff's accident she received emergency medical treatment at West Florida Hospital and that Pall/Gelman's workers' compensation carrier paid for the majority of this treatment.[8]  Plaintiff accepted these payments and never asked that they be stopped.  (Doc. 69 at 3).   Plaintiff retained legal counsel to assist in

---

8  A small amount was paid by plaintiff's personal health care provider, Blue Cross Blue Shield of Florida. Plaintiff later sought reimbursement for her private healthcare provider from defendants' workers' compensation carrier. (Doc. 69 at 3, exh. 65).

representing her interests in the workers' compensation proceedings.  (Doc. 69 at 4, doc. 81 at 5).  The attorney, Crystal Spencer, has affirmatively sought to recover the following benefits in plaintiff's behalf:

1.  authorization of a psychiatrist

2.  correction of plaintiff's average weekly wage indemnity benefits

3.  reimbursement to her private health insurance provider for paid prescription expenses;

4.  reimbursement of $45.47 in out-of-pocket expenses paid by plaintiff

5.  attendant care services

6.  authorization of the treatment and medical recommendations of Dr. Jeffrey Cox, including cervical steroid injections, a spinal stimulator, and an air adjust dual zone bed;

7.  authorization for an adjustable bed

8.  a request for medical treatment by an orthopedic specialist other than Dr. Phillip Benton;

9.  medical care under the supervision of Dr. Marcus Schmitz, including neck surgery as recommended by Dr. Marcus Schmitz; and

10.  interest as permitted by § 440.20(8) Florida Statutes, penalties as permitted by § 440.207(7), Florida Statutes, and costs and attorneys fees as permitted by § 440.34, Florida Statutes.

(Doc. 81 at 5-6, doc. 83 at 2-3).  Among the documents filed or prepared by plaintiff's attorney to obtain these benefits were: written correspondence to defendants' workers' compensation carrier in an attempt to resolve certain issues, two "Workers' Compensation Managed Care Grievances" for attendant care and additional medical care for the plaintiff, two "Requests for Assistance" for attendant care and additional medical care, and two Petitions for Benefits with the Florida Department of Labor and Employment Security indicating an intent to formally resolve disputes over certain benefits after informal attempts at resolution were unsuccessful.  (Doc. 69 at 4-5, exh. 65-71).  A formal mediation was

held before the state workers' compensation mediator on April 4, 2002 and plaintiff attended, although she did not attend mediation sessions in December of 2003 and January of 2004  (Doc. 69 at 7, exh. B at 179, 181, 182).  She also testified that she attended at least one final hearing before a judge, at which the judge entered a Final Order Denying Attendant Care. (Exh. B at 182-83, 185, exh. 87).[9]  However, her workers' compensation attorney maintains that plaintiff's claim is continuing and ongoing in nature, has not been settled and is not contemplated being settled at this time.  (Doc. 83 at 3).

Plaintiff claims that the election of remedies doctrine does not apply because although she has received benefits, she has not pursued her workers' compensation remedy to a conclusion on the merits. See, e.g., *Lowry v. Logan*, 650 So.2d 653, 657 (Fla 1st DCA 1995) ("the mere bringing of an action or choosing a remedy is not deemed an 'election of remedies' unless the remedy chosen is pursued to full satisfaction") (citing *Williams v. Robineau*, 124 Fla. 422, 168 So. 644, 646 (Fla. 1936)); *Williams v. Duggan*, 153 So.2d 726, 727 (Fla. 1963) (filing of a workers' compensation claim and taking procedural steps to dismiss the case without any disposition of the issues on the merits is not an election of remedies).   In *Lowry* and several of the cases cited therein, the plaintiffs had not received any benefits, and the workers' compensation litigation involved a question as to whether the employer had workers' compensation insurance or whether the plaintiff was a covered employee.  *Lowry*, *supra* (summary judgment reversed because factual questions remained as to whether plaintiff was a covered employee or an independent contractor and whether he was injured in the course and scope of his employment); *Duggan*, *supra* (employee did not receive benefits because employer did not have workers' compensation coverage and was allowed to proceed with civil action); *Marta v. Continental Mfg. Co., Inc.,* 400 So.2d 181 (Fla. 4th DCA 1981) (plaintiff whose workers' compensation claim was denied because employer was not covered by workers' compensation insurance at the time of the injury was allowed to proceed with civil suit).  The *Lowry* court also held that in order to constitute an election of remedies, there must be "evidence of a conscious

---

9  Plaintiff's attempt to appeal this order was apparently untimely filed.  See *Gasparik v. Gelman Sciences and Travelers'*, 846 So.2d 635 (Fla. 1st DCA 2003).

intent by the claimant to elect the compensation remedy and to waive his other rights." *Lowry*, 650 So.2d at 657 (citing *Wishart v. Laidlaw Tree Service, Inc.,* 573 So.2d 183 (Fla. 2nd DCA 1991); *Velez v. Oxford Development Co.,* 457 So.2d 1388 (Fla. 3rd DCA 1984), *pet. for rev. denied*, 467 So.2d 1000 (Fla. 1985)).  Plaintiff relies on the statement of her workers' compensation attorney that she has not pursued a determination or conclusion on the merits of her workers' compensation claim and that it is ongoing and continuous in nature and has not been settled.  (Doc. 83, affidavit of Crystal Spencer, Esq.)

Defendants posit that plaintiff's contention that no resolution has been reached in her workers' compensation claim is incorrect, because although her ultimate "remedy" has not been pursued to a determination, numerous formal Petitions for Benefits have been resolved through workers' compensation litigation, whether by settlement, voluntary dismissal, or formal adjudication by trial level and appellate courts.  (Doc. 89 at 4-5). Defendants note that unlike a standard civil tort claim, a workers' compensation claim remains active and continuing despite a claimant filing repeated Petitions for Benefits and litigating those actions.  Neither party has specifically set forth what constitutes "pursuit of a remedy to conclusion" under the applicable law.  The First District Court of Appeal's opinion in *Martin Electronics, Inc. v. Jones* is instructive, however.  877 So. 2d 765 (Fla. 1st DCA 2004).  In *Jones*, the court accepted without discussion the employer Martin's position that plaintiff had actively pursued his workers' compensation case to a conclusion on the merits.  Although the employer had voluntarily paid many benefits, plaintiff Jones had filed a petition for additional attendant care benefits.  This claim was litigated before a judge of compensation claims and the employer appealed the unfavorable result to the First District Court of Appeal.[10]  The First DCA noted that mere passive receipt of workers' compensation benefits would not give rise to judicial estoppel.  *Id.,* 877 So. 2d at 768 (citing *Wishart v. Laidlaw Tree Serv., Inc.*, 573 So.2d 183, 184 (Fla. 2nd DCA 1991) ("Acceptance of the payments constitutes no election of remedies...."); *Wheeled Coach Indus. v. Annulis*, 852 So.2d 430, 433 (Fla. 5th DCA 2003); *Hernandez v. United Contractors Corp.*, 766

_____

10  The award of benefits was affirmed with minor modification.  877 So. 2d at 767; *Martin Electronics v. Jones*, 871 So.2d 277, 278 (Fla. 1st DCA 2004).

So.2d 1249, 1252 (Fla. 3rd DCA 2000); *Lowry v. Logan*, 650 So.2d 653, 657 (Fla. 1st DCA 1995); *Wright v. Douglas N. Higgins, Inc.*, 617 So.2d 460, 462 (Fla. 3rd DCA 1993); *Velez v. Oxford Dev. Co.*, 457 So.2d 1388, 1390 (Fla. 3rd DCA 1984).  However, it further noted that "filing a petition for additional attendant care benefits, litigating before the judge of compensation claims on the theory that a covered industrial accident occurred, and obtaining an order predicated on the finding that Mr. Jones sustained an injury by accident 'implie[d] a conscious intent ... to choose compensation benefits over a tort action.'" *Id.* (Citing *Velez*, 457 So.2d at 1390. See *Townsend v. Conshor, Inc.*, 832 So.2d 166, 167 (Fla. 2nd DCA 2002); *Michael v. Centex-Rooney Constr. Co., Inc.*, 645 So.2d 133, 135 (Fla. 4th DCA 1994); *Ferraro v. Marr*, 490 So.2d 188, 189 (Fla. 2nd DCA 1986); *Ferguson v. Elna Elec., Inc.,* 421 So.2d 805, 806 (Fla. 3rd DCA 1982).  Therefore, based on the decision in *Jones*, as it stands,[11] litigation of a single petition for additional benefits under the workers' compensation law, which plaintiff in this case has certainly done, would appear to satisfy the election of remedies requirement.  That makes this case factually indistinguishable from *Jones*, and the court is bound by that case.  Plaintiff's policy-oriented arguments concerning the meaning of the word "accident" and whether precluding her from proceeding on an intentional tort claim deprives her of a meaningful right to elect are before and will be resolved by the Supreme Court of Florida.[12]  Nevertheless, this court is bound to apply *Jones*, and as the law now stands, defendants are entitled to summary judgment.

---

11  In Jones' brief on appeal he argues that the order concerning attendant care benefits is not a final adjudication of the workers' compensation claim , but merely a facet of the workers' compensation case, and that no final adjudication has taken place because Jones is receiving ongoing workers' compensation payments. 2004 WL 2479869 at *33-34.  Again, if the *Jones* court was wrong about this, the issue will be decided by the Supreme Court of Florida.

12  *See* 2004 WL 2479869.

Accordingly, it is ORDERED:

Defendants' motion for summary judgment regarding plaintiff's election of workers' compensation remedies (doc. 68) is GRANTED.  The clerk is directed to enter judgment against the plaintiff and in favor of defendants Pall Corporation and Gelman Sciences, Inc. The court reserves its inherent jurisdiction to consider any application for fees and costs.

DONE AND ORDERED this 14th day of April, 2006.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**